**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

| | |
|---|---|
| In re: | ) |
| | ) |
| | )    **Chapter 7** |
| Rebecca L. Jones, | ) |
| | )    **Case No. 17-10502 LSS** |
| Debtor. | ) |
| | ) |

**CHAPTER 7 TRUSTEE'S REPLY TO DEBTOR'S OBJECTION TO APPROVE
COMPROMISE, AND REQUEST FOR THE COURT TO IGNORE THE OBJECTION
ON THE GROUNDS THAT THE DEBTOR LACKS STANDING TO CHALLENGE THE
PENDING MOTION OF THE TRUSTEE**

Laura Margulies, the Chapter 7 Trustee, for the estate of Rebecca L .Jones. by and through her undersigned counsel, Laura Margulies & Associates, LLC, submits this Reply Brief in support of her position that the Debtor, Rebecca L. Jones, *pro se*, lacks standing to challenge the Trustee's Motion for Approval of Compromise of Controversy.

For the reasons set out below, the Trustee urges the court to enforce the requirement of a threshold showing of standing by the Debtor seeking to challenge the efforts of the trustee before the Court.  The doctrine of standing furthers the goals of the Bankruptcy Code by preventing endless bankruptcy litigation among those lacking a direct interest and by establishing a strict standard that challengers must satisfy to challenge a bankruptcy court's actions.  The "persons aggrieved" standard poses a substantial hurdle that a challenger must overcome prior to burdening the court and the creditors with objections that serve no useful end for parties who have no stake and at the very same time harm  the creditors that do have a stake.  In this case, the the objecting party cannot meet even a less stringent standard of standing by showing her rights might be affected by the relief sought by the Trustee.  The court should disregard the objection of the Debtor and grant the Trustee's Motion to Approve Compromise.

1

**BACKGROUND**

On January 13, 2017, the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code ("Filing Date") and Laura Margulies, Esquire was appointed as Chapter 7 Trustee (the "Trustee").

There is valuable unexempt property of the Bankruptcy Estate which consists of a claim the Debtor had against the College of Southern Maryland ("CSM") in which she alleged CSM violated the Family and Medical Leave Act ("FMLA") when it failed to renew her contract after she sought leave under the FMLA. Prior to the filing of this case, the Debtor, through her attorney, Jason A. Grant ("Grant") filed a lawsuit against CSM in the U.S. District Court for the District of Maryland, case no 8:14-CV-03869-PWG (the "Lawsuit"). The Debtor did not disclose this Lawsuit in her original Schedules or in her original Statement of Financial Affairs. At the Section 341 Meeting of Creditors held on February 21, 2017, the Trustee asked the Debtor if all the information contained in all the documents that were filed with the Court on her behalf were true and correct, and the Debtor responded that they were. After that statement, the Trustee asked her other questions regarding her assets and liabilities, and specifically asked her whether she had any claims or lawsuits against anyone. She then, for the first time, responded that she had a lawsuit pending against her former employer for alleged violation of the FMLA. Following the 341 Meeting, the Trustee contacted Grant and discussed the case. The Trustee determined that the Lawsuit was an asset of the estate and on February 21, 2017, notified the Clerk to issue a Notice of Need to File Proof of Claim due to Recovery of Assets (Doc. 15). She also filed an Application to Employ Grant as Special Counsel (Doc. 18), which Application was granted (Doc. 27). Also, subsequent the Section 341 Meeting, the Debtor amended her Schedules and

Statement of Financial Affairs to include this Lawsuit, but did not exempt the claim (Doc. Nos. 16 and 17).

On March 7, 2017, the Trustee spoke to both Grant and Counsel for CSM, Bernadette M. Hunton, Esq. and Darrell R. VanDeusen, and was advised that the parties had gone to mediation, but were unsuccessful at resolving the case. The defendant, CSM, had offered $65,000.00 to settle the case, which the Plaintiff, the Debtor, rejected. The Trustee advised the parties that the Lawsuit was part of the Bankruptcy Estate and asked them to each send her a memorandum outlining the strength and weaknesses of their client's position. On March 10, 2017, both attorney for the Plaintiff and attorney for the Defendant sent her their memoranda. After reviewing the memoranda and discussions with Grant, the Trustee determined that the sum of $75,000.00 would be a reasonable settlement in this case. Defendant had strong defenses to the Lawsuit including poor performance reviews of the Plaintiff, the alleged inflexibility of Plaintiff regarding her schedule and the unwillingness to teach at the college's other locations. While the time line of the Plaintiff, that her contract was not renewed after she requested leave under the FMLA supported her position. The Debtor was earning approximately $65,000 annually at the time her employment with CSM ended. It took her a year to gain new employment which paid her approximately $19,000 less than what she was earning at CSM. The following year she obtained new employment where she earns approximately $18,000 more than she did with CSM.

The parties agreed to settle the case for $75,000.00 to avoid the costs and risk of trial in this case. Grant agreed that the settlement of $75,000.00 was in the best interests of the Debtor and the estate.

On March 29, 2017, the Trustee filed a Motion to Approve Compromise of Controversy,(Doc. No. 29). The Debtor filed an objection to the Trustee's Motion on April 11, 2017, (Doc. No. 36).

## TRUSTEE'S LEGAL POSITION

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In challenging a bankruptcy court order, the right of appellate review has historically been limited to "persons aggrieved." *See In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987); see also *In re Thompson*, 965 F.2d 1136, 1142 n.9 (1st Cir. 1992); *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir. 1989); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 641 (2d Cir. 1988); *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 513 (2d Cir. 1985). The Seventh Circuit stated that the "persons aggrieved" standard is stricter than the "general Article III" standard in order to prevent protracted litigation by those not directly affected by a bankruptcy order. *In re Andreuccetti*, 975 F.2d 416–17 (7th Cir. 1992); *see Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996) (stating a primary purpose of bankruptcy standing principles is to promote the efficient and orderly administration of estates for the benefit of creditors).

The question of whether or not a party has initial standing is based ultimately on law, not on fact. *1000 Friends of Maryland v. Browner*, 265 F.3d 216, 227 (4th Cir. 2001); see *Fund for Animals v. Babbitt*, 89 F.3d 128, 132 (2d Cir. 1996). Each legal claim must be addressed independently and must meet specific requirements in order to establish the party's right to be in federal court. *See James v. City of Dallas*, 254 F.3d 551, 562 (5th Cir. 2001), cert. denied, 534 U.S. 1113 (2002). To be a "person aggrieved" a party must show that its rights or interests were

"directly and adversely affected pecuniarily" by the bankruptcy court order. *See In re Trailer Source, Inc.*, 555 F.3d 231 (6th Cir. 2001).  The "person aggrieved" standard is more stringent than the constitutional test for standing. *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 530 (3d Cir. 1999).  In an attempt to limit the number of parties that have standing, courts have held that a bankruptcy court order that "directly and adversely affects pecuniarily" must diminish a party's property, increase a party's burden, or detrimentally affect a party's rights. *See In re Congoleum Corp.*, 426 F.3d 675, 685 (3d Cir. 2005); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 215 (3d Cir. 2004) ("Standing is not dispensed in gross, but rather is determined by the specific claims presented."); *see also In re DuPage Boiler Works, Inc.*, 965 F.2d 296, 297 (7th Cir.1992) ("The 'person aggrieved' test insures that bankruptcy proceedings are not unreasonably delayed by protracted litigation by allowing only those persons whose interests are directly affected by a bankruptcy court order to appeal."); *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983) ("Efficient judicial administration requires that appellate review [in bankruptcy proceedings] be limited to those persons whose interests are directly affected.").

Thus, a person, whether the debtor, debtor's counsel or a principal of the debtor, must have a "pecuniary interest" in the outcome of a bankruptcy proceeding in order to have standing to object to a trustee's actions.  The Debtor bears the burden of establishing standing. *See Spenlinhauer v. O'Donnell*, 261 F.3d 113, 118 (1st Cir. 2001) *citing, inter alia, Alfaro v. Vazquez (In re Alfaro)*, 221 B.R. 927, 931-32 (B.A.P. 1st Cir. 1998). To do so, she must adduce sufficient evidence to demonstrate that the relief sought by the Trustee directly and adversely affects their pecuniary interests.

However, even if the court were to apply the broader test for standing (such as that used in the context of a contest to a chapter 11 plan) suggested by the Third Circuit's decision in *In re*

5

*Global Indus. Technologies, Inc.*, 645 F.3d 201 (3d Cir. 2011), that case suggests that unless a Code provision specifically defines "party in interest" and limits participation to only certain parties within that provision, then "party in interest" should be interpreted broadly to allow those parties whose rights might be affected by a bankruptcy proceeding the right to participate in that proceeding.  The Debtor cannot meet that standard either.

### Since There Is No Reasonable Possibility Of A Surplus After Satisfying All Debts, The Debtor Lacks Standing

In order to establish a pecuniary interest a debtor must demonstrate a reasonable possibility of a surplus distribution after all creditors' claims are satisfied. *See Spenlinhauer v. O'Donnell*, 261 F.3d 113 (1st Cir. 2001); *In re Cult Awareness Network, Inc.*, 151 F. 3d 605 (7th Cir. 1998); In re Richman, 104 F.3d 654 (4th Cir. 1997); *In re Andreuccetti*, 975 F.2d 413 (7th Cir. 1992); *In re El San Juan Hotel*, 809 F.2d 151 (1st Cir. 1987); *Gregg Grain Co. v. Walker Grain Co.*, 285 F. 156 (5th Cir. 1922).   In most circumstances, a Chapter 7 debtor is not a "person aggrieved." *Monus v. Lambros*, 286 B.R. 629, 634 (N.D. Ohio 2002) ("Chapter 7 debtors rarely have a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor."); *see also In re O'Donnell*, 326 B.R. 901, at *5 (B.A.P. 6th Cir. 2005) (unpublished) (collecting cases). When a debtor files for Chapter 7, "all legal or equitable interests of the debtor in property as of the commencement of the case" are given to the estate. See 11 U.S.C. § 541. Once the bankruptcy trustee is appointed, he becomes the sole representative of the estate, he is the one with the pecuniary interests, and he alone has the "capacity to sue and be sued," including filing an appeal on behalf of the estate. See 11 U.S.C. § 323; *In re New Era, Inc.*, 135 F.3d 1206, 1209 (7th Cir. 1998) (holding that only the trustee had standing to appeal an order adverse to debtor); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535 (4th Cir. 1997) (noting the trustee alone has standing to prosecute appeals); *In re Eisen*,

31 F.3d 1447, 1451 n.2 (9th Cir. 1994) (same); *In re Gulph Woods Corp.*, 116 B.R. 423, 428 (Bankr. E.D. Pa. 1990) (stating only the trustee, and not the debtor, has the capacity to represent estate and to sue and be sued); *Cain v. Hyatt*, 101 B.R. 440, 442 (E.D. Pa. 1989) (noting only the trustee has authority to prosecute or settle causes of action).

The Seventh Circuit case *In re Cult Awareness Network* is one of the most frequently cited cases on the bankruptcy standing issue. The Cult Awareness Network ("Cult Awareness") was a non-profit entity engaged in anti-cult advocacy and cult victim support. In 1996, Cult Awareness filed Chapter 11 reorganization case in the Northern District of Illinois after it became embroiled in legal disputes with churches it had alleged to be cults. One such church was the Church of Scientology. Cult Awareness failed to get a plan confirmed and ultimately the case was converted to a Chapter 7 liquidation proceeding and a trustee was appointed.

The Chapter 7 trustee auctioned Cult Awareness's trade name, mailing lists, telephone records and similar assets to an individual alleged to be associated with the Church of Scientology. The debtor filed an objection to the trustee's motion to confirm the sale. The Bankruptcy Court ruled that Cult Awareness lacked standing to object to the sale because it lacked a "pecuniary interest" in the outcome of the sale. The District Court affirmed the opinion of the Bankruptcy Court.

On appeal, the Seventh Circuit upheld the rulings of the lower courts. The Court of Appeals confirmed that a debtor must show a "reasonable possibility of a surplus after satisfying all debts" in order to have a pecuniary interest and standing to object to the trustee's actions. *Cult Awareness*, 151 F. 3d at 608 (citing *Andreuccetti*, 975 F 3d at 417). Cult Awareness argued that there was a possibility of a surplus distribution because judgments against it were on appeal. The Court found that the possibility of a surplus recovery was too remote. "The purpose of the

pecuniary interest rule 'is to insure "that bankruptcy proceedings are not unreasonably delayed by protracted litigation by allowing only those persons whose interests are directly affected by a bankruptcy order to appeal."'" *Id*. at 609 (citations omitted). The opinion further stated:

> [c]ourts consistently have noted a public policy interest in reducing the number of ancillary suits that can be brought in the bankruptcy context so as to advance the swift and efficient administration of the bankrupt's estate. This goal is achieved by narrowly defining who has standing in a bankruptcy proceeding.

*Id*. (quoting *Richman*, 104 F. 3d at 656-57).

Applying the established law and policy to the matters currently before the court, if the court were to grant the relief sought by the Debtor, i.e. deny approval of the settlement agreement, the best outcome of the litigation would not be sufficient to pay all claims currently filed in full. The claims bar date is May 22, 2017, but there are $137,075.34 of unsecured claims filed thus far and $6,117.23 of priority claims filed for a total of $143,192.57. In light of the large amount of claims filed, there remains no possibility of a surplus in this case. The Family Medical Leave Act does not offer a prevailing plaintiff punitive or compensatory damages. From a monetary standpoint, if offers the plaintiff the opportunity to recover back pay. In this case, she could be awarded the $65,000 she would have earned the year following her unemployment, and an additional $19,000 for the difference between what she made the next year and her earnings with Defendant, and then the award would be reduced by $18,l000 due to her earning that much more than she was earning with Defendant the following year, for a total award of $66,00.00. Accordingly, the settlement proposed by the Trustee of $75,000.00 is actually more than she could be awarded in the case had it gone to trial, which amount is still not sufficient to pay her creditors in full and would leave no surplus proceeds for the Debtor.

## CONCLUSION

The requirement of a showing of standing by parties seeking to challenge the efforts of the trustee before the court furthers the goals of the Bankruptcy Code by preventing endless bankruptcy litigation among those lacking a direct interest and by establishing a strict standard that challengers must satisfy to challenge a bankruptcy court's actions. The "persons aggrieved" standard poses a substantial hurdle that a challenger must overcome prior to burdening the court and the creditors with objections that serve no useful end for parties who have no stake. However, in this case, the Debtor cannot meet even the lesser standard that their "rights might be affected by the bankruptcy proceeding". The Court must disregard the objections of the Debtor, for lack of standing and grant the relief sought by the Trustee

Dated: April 26, 2017                                      Respectfully submitted,

**Laura Margulies & Associates, LLC**

/s/ Laura J. Margulies

Laura J. Margulies, # 06585

6205 Executive Blvd.

Rockville, MD 20852

(301) 816-1600

ecf@law-margulies.com

*Attorney for Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of April 2017, a copy of the foregoing was served first class mail and/or electronically via ECF, to:


Office of the U.S. Trustee

6305 Ivy Lane, Suite 600

Greenbelt, MD  20770


Rebecca L Jones

2805 OCALA AVE

DISTRICT HEIGHTS, MD  20747


Jason A. Grant

*jagrant@dgolawgroup.com*


 Sarah E. Longson, Esquire

Bernadette Hunton

Darrell R. VanDeusen

*BHunton@kollmanlaw.com*

*dvand@kollmanlaw.com*

slongson@kollmanlaw.com

/s/ Laura J. Margulies

Laura J. Margulies, Esq.